IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

| | |
|---|---|
| DAVID A. LLOYD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 2:08-CV-018 |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## **MEMORANDUM OPINION**

This is an action for judicial review, pursuant to 42 U.S.C. § 405(g), of defendant Commissioner's final decision denying plaintiff's claim for disability insurance benefits. For the reasons set forth herein, defendant's motion for summary judgment [doc. 13] will be granted, and plaintiff's motion for judgment on the pleadings [doc. 11] will be denied. The final decision of the Commissioner will be affirmed.

I.

*Procedural History*

Plaintiff applied for benefits in April 2005, claiming to be disabled by "neck injury, mental breakdown – panic attacks, anxiety, nerves, inability to concentrate, depression." [Tr. 75, 78]. He claims a disability onset date of July 25, 2004, secondary to alleged 2004 injuries to his lower back (July) and neck (November). [Tr. 53, 67]. The claim

was denied initially and on reconsideration. Plaintiff then requested a hearing, which took place before an Administrative Law Judge ("ALJ") in April 2007.

In October 2007, the ALJ issued a decision denying benefits. He concluded that plaintiff suffers from the severe impairments of "cervical strain and history of low back pain," but that those conditions are not equal, individually or in combination, to any impairment listed by the Commissioner. [Tr. 16, 18-19]. The ALJ thoroughly discussed the administrative record and found "significant" and "strong" evidence of symptom exaggeration, leading to the conclusion that plaintiff's subjective statements are unreliable. [Tr. 16, 19]. The ALJ further concluded that plaintiff retains the residual functional capacity ("RFC") to perform the full range of medium exertion. The ALJ applied "grid" rules 203.14 and 203.15 which directed a finding of "not disabled." [Tr. 18-19].

Plaintiff then sought review by the Commissioner's Appeals Council. On January 7, 2008, review was denied notwithstanding plaintiff's submission of six pages of additional argumentation and evidence. [Tr. 6, 9].[1] The ALJ's ruling therefore became the Commissioner's final decision. *See* 20 C.F.R. § 404.981. Through his timely complaint, plaintiff has properly brought his case before this court for review. *See* 42 U.S.C. § 405(g).

---

[1] Plaintiff's additional documents [Tr. 474-79] are not discussed in his brief and are not an issue on appeal. *See Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993); *Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 491 (6th Cir. 2006).

2

## II.

### *Background and Testimony*

Plaintiff was born in 1959. [Tr. 75]. He has a high school diploma and worked for nineteen years, until 2004, as a courier. [Tr. 79, 84].

Plaintiff claims "constant" neck pain "that requires rest and medication to endure." [Tr. 116, 155, 163]. He also claims to suffer "severe pain flare ups in my lower back [causing him to be] bedridden for a week." [Tr. 155].

Plaintiff can drive, care for his dog, operate a riding mower (until he moved in 2005 and was no longer responsible for lawn care), and perform light cooking and housecleaning. [Tr. 108-10, 115, 123, 147]. He purportedly can only be active for a very short time before he must stop to rest for at least forty-five minutes due to "a lot of" neck pain. [Tr. 123, 143, 491]. Plaintiff claims that his pain is brought on by moving, standing, sitting, postural changes, or lying down. [Tr. 138, 143-44, 148, 151-52].

Plaintiff also allegedly suffers "panic attacks" and insomnia caused in part by "worry about my situation." [Tr. 138, 143]. He purports to be depressed because he is no longer a "get-it-done guy," a "go to guy," or "the guy." [Tr. 122, 321, 337, 340, 350, 496]. He also claims that his motivation and ambition are "impaired." [Tr. 110, 130, 138, 143, 145].

Plaintiff contends that his emotional problems are a consequence of injuries suffered in 2004. [Tr. 53, 84, 116-17, 163].

3

III.

*Applicable Legal Standards*

This court's review is limited to determining whether there is substantial evidence in the record to support the ALJ's decision. 42 U.S.C. § 405(g); *Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The "substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Beavers v. Sec'y of Health, Educ. & Welfare*, 577 F.2d 383, 387 (6th Cir. 1978) (quoting *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 488 (1951)). In reviewing administrative decisions, the court must take care not to "abdicate [its] conventional judicial function," despite the narrow scope of review. *Universal Camera*, 340 U.S. at 490.

A claimant is entitled to disability insurance payments under the Social Security Act if he (1) is insured for disability insurance benefits, (2) has not attained retirement age, (3) has filed an application for disability insurance benefits, and (4) is under a disability. 42 U.S.C. § 423(a)(1). "Disability" is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A).

4

> [A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B). Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). Plaintiffs bear the burden of proof at the first four steps. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five. *Id*.

IV.

*Analysis*

Plaintiff argues that the ALJ erred in not fully crediting the vocational opinions of treating physician Brett Wyche and treating psychiatrist Ronald Smith, whose statements the ALJ concluded "suggest [dire] limitations that are not otherwise supported by their own records, as well as the evidence as a whole and, in particular, the objective evidence of record." [Tr. 14]. Plaintiff also contends that it was error to apply the grid in this case in light of purportedly severe mental limitations.

A. Physical

General practitioner Wyche has submitted what plaintiff terms "uncontradicted" and controlling opinion evidence. According to the administrative record, Dr. Wyche has treated plaintiff since at least January 2001. His file is largely handwritten and illegible. The court can discern subjective complaints of lower back pain, anxiety, and depression. [Tr. 189, 198].

Dr. Wyche offered a series of opinion documents in 2006. First, despite having reviewed a June 2005 cervical MRI showing no significant abnormality [Tr. 225], Dr. Wyche opined that plaintiff is disabled by "cervical vertebrae damage" and lower back pain. [Tr. 228]. Dr. Wyche further opined that plaintiff's alleged cervical and lumbar pain severely restricts his attention and concentration. [Tr. 229]. Dr. Wyche also stated that plaintiff suffers fatigue and other disabling limitations secondary to neck pain, lower back pain,

6

depression, and insomnia. [Tr. 230-31]. Lastly, Dr. Wyche wrote in September 2006,

> Mr. Lloyd was a diligent long-term employee for a delivery service with an excellent employment record.
>
> He was injured November 19, 2004 . . . . [T]he patient attempted to return to work, but because of the pain in his neck, limitation of motion, etc., he was unable to do so.
>
> Being unable to work and because of his dedicated work ethic, the patient has become very depressed, requiring appropriate antidepressants.
>
> Since it has been almost two years with no significant resolution of his injuries, my belief is that this will be a permanent condition.

[Tr. 175]. The court can in no way agree with plaintiff that Dr. Wyche's views are "uncontradicted" or that they are entitled to controlling weight.

In addition to the June 2005 cervical MRI, the administrative record contains a June 2004 lumbar imaging report showing "[n]o acute skeletal abnormality." [Tr. 241]. February 2007 imaging showed only very mild disc space narrowing at C4-5 and C5-6, along with moderate foraminal narrowing at C4-5. [Tr. 414-16].

In August 2004, physical therapist Kim Contryman noted moderate lumbar muscle spasms secondary to a recent lower back strain. [Tr. 285-86]. After three weeks of physical therapy, plaintiff reported that his lower back felt "great," that his pain had decreased, and that his spasms were minimal. [Tr. 278]. He was discharged from physical therapy soon thereafter for non-participation. [Tr. 275].

Plaintiff returned to therapy in November 2004 with a diagnosis of cervical strain. [Tr. 271]. He exhibited spasms, stiffness, tenderness, and reduced cervical range of

7

motion. [Tr. 269]. Plaintiff was released from therapy in January 2005 even though he continued to demonstrate tenderness and tension in the cervical region. [Tr. 255-56].

Plaintiff was treated by Watauga Orthopaedics from November 2004 until February 2005. By February 11, 2005, plaintiff exhibited full range of motion in both the cervical and lumbar spines. [Tr. 299]. Orthopaedist Richard Duncan diagnosed cervical strain and history of degenerative back pain, both of which were considered to be resolved. [Tr. 299]. Dr. Duncan assigned "0% permanent impairment to the body as a whole. I didn't place any restrictions on him." [Tr. 299].

Plaintiff returned to physical therapy in the summer of 2005, again with a diagnosis of cervical strain. Plaintiff told Ms. Contryman that, when he had reported improvement to her the prior January, he had "just lied so he could get back to work." [Tr. 250].[2] Ms. Countryman noted cervical tenderness, stiffness, muscle guarding, weakness, and decreased range of motion. [Tr. 250-51]. After several therapy sessions, Ms. Contryman wrote that plaintiff's spasms and range of motion had improved but, "He continues to be guarding with all cervical movement and appears to be fearful of moving. He is limiting his rehabilitation by his hypersensitivity . . . ." [Tr. 246]. For example, plaintiff complained of pain when performing basic rehabilitation exercises with a two-pound weight. [Tr. 245].

---

[2] Plaintiff also later stated that he "lied to" the Watauga Orthopaedics physicians. [Tr. 333]. "Lying to" those specialists does not, however, explain how plaintiff exhibited a full range of cervical motion at his final appointment with that treating source. [Tr. 299]. *See Martin v. Sec'y of Health & Human Servs.*, No. 85-1828, 1986 WL 18075, at *6 (6th Cir. Oct. 23, 1986) (range of motion is an *objective* finding).

8

In July 2005, plaintiff was evaluated by brain and spine specialist David Wiles. Dr. Wiles noted mild discomfort, tenderness, and limited range of motion of the neck. [Tr. 291-92]. Dr. Wiles offered speculative diagnoses but opined that "from a neurosurgical standpoint he certainly has nothing to address." [Tr. 292].

Nonexamining Dr. Saul Juliao completed a Physical RFC Assessment in August 2005. Dr. Juliao opined that plaintiff can work at the medium level of exertion, with only occasional climbing of ladders and no concentrated exposure to most environmental irritants. [Tr. 362-69].

Plaintiff was evaluated by neurosurgeon Jim Brasfield between September and November 2005. Following examinations and review of multiple diagnostic studies, Dr. Brasfield opined that plaintiff "remains neurologically intact." [Tr. 330]. Specifically, Dr. Brasfield wrote,

> As I noted and discussed with patient today, I have no basis at this point to prevent him from returning to his regular work. Accordingly, he has been given "return to work slip," beginning 11/23/05 to return to regular work activity without restrictions from the neurological standpoint. . . .
>
> . . .
>
> . . . The patient has no focal deficit that I can identify. . . .

[Tr. 328].

The Commissioner is not required to accept a treating physician's opinion if it is not supported by sufficient medical data and if a valid basis is articulated for the rejection. *See Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987). In addition, the

9

existence of a treating relationship is but one factor to be considered in weighing opinion evidence. Other factors relevant to this appeal include supportability, specialization, and consistency with the record as a whole. *See* 20 C.F.R. § 404.1527(d)(3)-(5).

   Substantial evidence supports the ALJ's rejection of Dr. Wyche's assessment. As noted by the ALJ [Tr. 14, 18], the opinion of general practitioner Wyche conflicts with the views of multiple examining specialists:

> - orthopaedist Duncan, who in February 2005 considered plaintiff's complaints to be resolved, assigned "0% permanent impairment," and "didn't place any restrictions on him" [Tr. 299];[3]
>
> - brain and spine specialist Wiles, who in July 2005 opined that "from a neurosurgical standpoint he certainly has nothing to address." [Tr. 292]; and
>
> - neurosurgeon Brasfield, who in November 2005 opined that plaintiff "remains neurologically intact" [Tr. 330] and released plaintiff to return to work with no neurosurgical restrictions. [Tr. 328].

*See* 20 C.F.R. § 404.1527(d)(4), (5). As further noted by the ALJ, Dr. Wyche's assessment is inconsistent with the objective record as a whole, including the February 2007 imaging. *See* 20 C.F.R. § 404.1527(d)(3), (4). Most strikingly - as again noted by the ALJ - Dr. Wyche's opinion is not even supported by his own records. Although the only MRI in his file showed no significant cervical abnormality [Tr. 225], Dr. Wyche opined that plaintiff is disabled in part by "cervical vertebrae damage." [Tr. 228]. Lastly, to the extent Dr. Wyche deems plaintiff disabled by psychological issues, Dr. Wyche is not a mental health

---

[3] Having reviewed Dr. Duncan's records, the court cannot accept plaintiff's contention that the orthopedist's views are simply a misguided consequence of been lied to by his patient.

10

professional, *see* 20 C.F.R. § 404.1527(d)(5), and his views are largely inconsistent with the psychological evidence of record.

For these reasons, substantial evidence supports the ALJ's well-explained rejection of Dr. Wyche's opinion. The ALJ adequately discussed his synthesis of the inconsistent administrative record, and the substantial evidence standard of review permits that "zone of choice." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986).

B. Psychological

As with Dr. Wyche, plaintiff argues that the opinion evidence of treating psychiatrist Ronald Smith is "uncontroverted" and entitled to controlling weight. As with Dr. Wyche, the court cannot agree.

The administrative record shows monthly counseling sessions with Dr. Smith between November 2005 and February 2007. [Tr. 338-53, 417-26]. Dr. Smith's handwritten notes chronicle plaintiff's subjective complaints. In July 2006, Dr. Smith opined that plaintiff satisfies the Commissioner's 12.06 anxiety-related disorder listing and 12.04 affective disorder listing, the latter evidenced in part by at least three episodes of decompensation within one year, each lasting at least two weeks. [Tr. 354-58]. Dr. Smith further opined that plaintiff would be markedly limited in five vocational abilities. [Tr. 359-60]. Dr. Smith wrote,

> Functioning has been severely compromised. The patient measures his self esteem & sense of self worth by accomplishments. He finds himself falling short of his own expectations leading to [increased] anxiety and [illegible] about failure.

11

> The patients [sic] level of functioning has been significantly impaired by chronic neck and back pain. Under stress physical symptoms flare and further limit functioning.

[Tr. 355, 357] (emphasis in original). As with the opinions of general practitioner Wyech, Dr. Smith's views are in conflict with the remaining evidence of record.

Following an initial psychiatric evaluation in July 2005, Dr. Safia Sabri diagnosed posttraumatic stress disorder and major depressive disorder. [Tr. 308-10]. At a medication follow-up appointment in September 2005, plaintiff told Dr. Sabri that, because of anxiety, "he is not able to deal with work environment. At this time, he notes that he would like to do some type of voluntary work with people." [Tr. 307].

Psychological examiner Anna Palmer and clinical psychologist Diane Whitehead performed a psychological evaluation in August 2005. Plaintiff "explained his disabilities by saying, 'Any kind of stress or pressure just tears me up. I mean, just this appointment, I was worried about it all night. Physically, my neck can't take it." [Tr. 321]. Plaintiff reported "anxiety symptoms of excessive worry which is difficult to control, restlessness, fatigue, and sleep disturbance. He stated that he has experienced these symptoms most of his life, even before the accident when he injured his neck." [Tr. 323]. The examiners diagnosed generalized anxiety disorder, panic disorder without agoraphobia, and major depressive disorder single, moderate. [Tr. 325]. They predicted satisfactory abilities of concentration, persistence, comprehension, and interaction with others. [Tr. 325]. They predicted possible limitations in workplace adaptation and maintaining attendance. [Tr.

12

325].

Nonexamining Dr. William Regan completed a Mental RFC Assessment in September 2005. Dr. Regan predicted no more than moderate limitation in any vocational activity. [Tr. 370-72].[4]

In November 2005, plaintiff attended an intake interview and single counseling session with social worker John Singleton. The notes from those sessions are striking. In material part, Mr. Singleton wrote,

> . . . He stated that he has been injured and is now unable to work. He was not specific about the nature of his injury, but insisted that he is not able to work. He was able to enter the office with an easy gait, and appeared to be in no physical distress. His thinking was clear and goal oriented, and he stated his issues as associated with an inability to work and the loss of self esteem associated with being dependent. *He is a self described workaholic* and perfectionist. His presentation seemed to be [somewhat] stilted. His associations were, at times, apparently grandiose. . . .
>
> . . . he stated that he feels called upon to do good works for human kind, and that, *if he is granted disability benefits, he will devote his existence to visiting shut ins, delivering meals, and serving God.* The apparent religious ideations present in his presentation were explored, and no evidence of psychosis was noted. *He indicated that his assesment [sic] of his physical abilities allows for his involvement in caring for those in need. He insisted that he is not able to work.*

[Tr. 361] (emphasis added).

At the administrative hearing, the ALJ ordered a psychological evaluation. The evaluation was performed by examiner Art Stair and psychologist Charlton Stanley in May

---

[4] A second nonexamining source (signature illegible) completed a Mental RFC Assessment in March 2006, also opining that plaintiff would experience no more than moderate limitation. [Tr. 388-90].

13

2007. Mental status examination and behavioral observations were unremarkable. [Tr. 462]. No personality disorders were apparent. [Tr. 463]. MMPI-II results were deemed invalid and indicative of "intentional" symptom magnification likely falling short of "blatant malingering." [Tr. 463, 465]. One of eight SIRS testing scales was also indicative of "probable feigning." [Tr. 466]. Again, these results were considered more likely to be "unreliable reporting" than "blatant malingering." [Tr. 466]. Dr. Stanley opined that plaintiff would be no more than mildly limited in any vocational area, specifically stating,

> it is apparent that mild symptom amplification is possible. However, the scores do not indicate a blatant attempt to malinger. Accordingly, it is my opinion that the claimant does have some degree of underlying depression and anxiety. However, the severity of these difficulties are difficult to determine. The claimant has been diagnosed with major depressive disorder and generalized anxiety disorder in the past. The claimant's symptoms during this interview are consistent with these diagnoses. However, the claimant's symptoms may be amplified. Because of this, the severity of his reported symptoms will be reduced.

[Tr. 467-68].

Plaintiff's representative then asked Dr. Smith to review Dr. Stanley's conclusions. [Tr. 472]. Dr. Smith again wrote that plaintiff has "problems with pain," "evidence of" depression, anxiety, and perseveration, and "significant impairment of his functioning." However, although clearly invited to do so, Dr. Smith was "not able to assess the psychological report and come to diagnostic conclusions from the raw data." [Tr. 473].

The ALJ found Dr. Stanley's assessment to be more persuasive than Dr. Smith's. As noted by the ALJ, Dr. Smith's views are inconsistent with his own records. [Tr.

14

18]. Dr. Smith contends that plaintiff has experienced at least three episodes of decompensation, each of extended duration [Tr. 357], yet plaintiff alleges only one such episode. [Tr. 78-79, 84, 487, 505].

Dr. Stanley's views are supported by testing, while Dr. Smith's are not. *See* 20 C.F.R. § 404.1527(d)(3). Further, the court has reviewed the records of Drs. Stanley and Smith and finds Dr. Stanley's opinion to be far better explained. *See id.* It is also noteworthy that when offered the opportunity to counter Dr. Stanley's report, Dr. Smith was unable to do so in any meaningful way - a fact noted by the ALJ. [Tr. 16]. Dr. Stanley's conclusions are also consistent with those of Dr. Whitehead. *See* 20 C.F.R. § 404.1527(d)(4).

The court additionally notes that Dr. Smith's opinions appear to be primarily based on plaintiff's subjective reporting. The ALJ did not err in citing "strong" and "significant" evidence of symptom magnification. In addition to Dr. Stanley's findings on that subject, the court notes the following:

> 1. Plaintiff told the Commissioner in June 2005 that he only shops "when absolutely necessary." [Tr. 111]. In January 2006 and January 2007 he told the Commissioner that he can merely "ride along with my wife to the grocery store to do the grocery shopping. I walk beside her and she does all of the bending, reaching, lifting, and carrying." [Tr. 138, 148-49]. However, at his April 2007 administrative hearing, plaintiff testified under oath that *he* does the family's grocery shopping. [Tr. 493].
>
> 2. Plaintiff claims to be disabled in part by impaired concentration [Tr. 78], but that allegation is contradicted by both psychological evaluations. [Tr. 325, 468].

15

3. Plaintiff claims that sitting in a car causes increased pain, and he alleges, "It is hard to turn my head to the left to check for traffic due to pain in my neck." [Tr. 138, 148, 151]. However, plaintiff drove himself to the 2007 psychiatric evaluation and "report[ed] no specific driving difficulties." [Tr. 460].

4. On a similar note, while plaintiff testified that he can sit for no more than ten minutes at a time due to pain [Tr. 492], he also testified that he <u>purchased a new Corvette in the summer of 2006</u>, which he subsequently sold due to *financial* concerns. [Tr. 499].

5. Plaintiff repeatedly insisted to social worker Singleton that he is unable to work (despite being a "self described workaholic"), yet told that same source that "if he is granted disability benefits, he will devote his existence to visiting shut ins, delivering meals, and serving God." Plaintiff claimed that he could devote his life to "caring for those in need" based on *his own assessment* of his physical abilities. [Tr. 361].

Based on the record presently before this court, it "simply fails the straight face test" for plaintiff to complain that the Commissioner erred in not crediting his every subjective complaint. *Coffey v. Dowley Mfg., Inc.*, 187 F. Supp. 2d 958, 977 (M.D. Tenn. 2002). If plaintiff is incapable of sitting or driving, he would not have purchased a Corvette in 2006 nor would he ever be able to deliver food. If plaintiff is admittedly capable of "devot[ing] his existence to visiting shut ins, delivering meals, and serving God," then he is also admittedly capable of working. Although plaintiff claims "impaired motivation and ambition" secondary to depression, he clearly retains the motivation and ambition to perform work that interests him.

For the reasons discussed, substantial evidence supports the ALJ's rejection of Dr. Smith's opinions. In fact, on the record before this court, the ALJ appears to have offered plaintiff an extraordinary benefit of the doubt in concluding that he suffers from any

16

severe impairment at all.

## C. Grid

Lastly, plaintiff complains that the ALJ erred in relying on the grid. Where a claimant is found to be *physically* capable of performing the full range of work at a particular level, the Commissioner may meet his step five burden by referencing the grid unless the claimant has nonexertional impairments of sufficient significance. *See Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 424 (6th Cir. 2008); *Cole v. Sec'y of Health & Human Servs.*, 820 F.2d 768, 771-72 (6th Cir. 1987). In other words,

> It should be emphasized that the grid is only used when the components of the grid *precisely match the characteristics of the claimant*. Thus, the only role the guidelines play is to take administrative notice of the availability of jobs, or lack thereof, for claimants whose abilities are *accurately described by the grid*.

*Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 531 (6th Cir. 1981) (emphasis added).

Application of grid rules 203.14 and/or 203.15 were proper, as those provisions accurately describe plaintiff's abilities. *See id.*[5] To preclude use of the grid, a nonexertional limitation must *significantly* or *severely* restrict the ability to work. *See Cole*, 820 F.2d at 772. A minor restriction is insufficient. *See, e.g., Kimbrough v. Sec'y of Health & Human Servs.*, 801 F.2d 794, 796 (6th Cir. 1986). The ALJ did not err - particularly in light of the

---

[5] The ALJ actually mistakenly applied "advanced age" grid rules rather than the "younger individual" rules appropriate for plaintiff's age. This error is harmless, however, as the correct portion of the grid (rules 203.28 and 203.29) also direct a finding of "not disabled."

17

striking facts of the instant case - in agreeing with Drs. Whitehead and Stanley that plaintiff's psychological conditions do not result in any significant or severe restriction such as to preclude application of the grid.

Substantial evidence supports the ALJ's conclusion that plaintiff's complaints are, at a minimum, not fully credible. The court will not disturb the ALJ's credibility findings in this case. *See Gooch v. Sec'y of Health & Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987). The final decision of the Commissioner was supported by substantial evidence and will be affirmed. An order consistent with this opinion will be entered.

ENTER:

        s/ Leon Jordan
United States District Judge